UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYNARD VERSATILE CROWE,

        Petitioner,

v.

UNITED STATES OF AMERICA,

        Respondent.

_____/

Criminal Case No. 11-20481
Civil Case No. 16-12415

SENIOR UNITED STATES DISTRICT
JUDGE ARTHUR J. TARNOW

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S MOTIONS TO VACATE HIS SENTENCE PURSUANT TO 28 U.S.C. § 2255 [237, 270]; ORDERING THAT MR. CROWE BE RESENTENCED; ORDERING THE PROBATION OFFICER TO PREPARE A NEW PRESENTENCE REPORT; ORDERING THE PARTIES TO FILE NEW SENTENCING MEMORANDA; DENYING MR. CROWE'S REQUEST FOR AN EVIDENTIARY HEARING; AND DENYING A CERTIFICATE OF APPEALABILITY**

On March 21, 2013, a jury convicted Petitioner Raynard Versatile Crowe of conspiracy, bank robbery, pharmacy robbery, using or carrying a firearm during a crime of violence, and felon in possession of a firearm [Dkt. #159]. The Court sentenced Mr. Crowe to 535 months (44 years and 7 months) in prison on June 26, 2013 [183]. The Court of Appeals for the Sixth Circuit affirmed his conviction and sentence on June 8, 2015. *See United States v. Crowe*, 614 Fed. Appx. 303 (6th Cir. 2015). The Supreme Court denied Mr. Crowe's petition for a writ of certiorari on March 9, 2016. *See Crowe v. United States*, 136 S. Ct. 1364 (2016).

Shortly thereafter, on June 27, 2016, Petitioner filed this Motion to Vacate His Sentence Pursuant to 28 U.S.C. § 2255 [237]. The United States responded on August 18, 2016 [245]. Petitioner filed a number of supplemental materials in support of his original motion between August 26, 2016 and December 21, 2016 [246, 247, 248, 250, 251]. On January 24, 2019, the Court issued an Order [279] denying the *Johnson* component of Petitioner's Motion, assigning Mr. Crowe counsel, and ordering the United States to respond to his ineffective assistance of counsel and prosecutorial misconduct claims. The respondent filed its supplemental brief [281] on March 15, 2019.

## FACTUAL BACKGROUND

The Court adopts the Sixth Circuit's recitation of the facts:

> Crowe and [co-defendant Alfred] Wingate were tried for offenses arising from three separate robberies, the first of which occurred at the Citizens Bank in Grosse Pointe Woods, Michigan in May 2011. Six days before the robbery, Crowe opened an account, listing a false address on the application. He recruited Wingate and four others to assist, providing two of them with guns.

> On May 18, Crowe, Wingate, and one of their co-perpetrators arrived at Citizens Bank in a minivan belonging to Wingate's fiancée. Crowe entered the bank and withdrew $10 from his account. Crowe then relayed information about the situation inside the bank to Wingate and another co-perpetrator who were waiting outside. A short time later, Wingate and the coperpetrator entered the bank and pulled masks over their faces. Surveillance cameras captured their unmasked faces before they entered. Each pulled out a handgun. The co-perpetrator held a gun to the head of one of the two bank tellers and Wingate—pointing his gun— jumped over the counter to retrieve the money. A customer entered the

bank during the robbery and the coperpetrator, pointing the gun at the customer, forced him onto the ground. The two men left the bank with $45,350 in cash. Crowe later divided the money among all those who had helped with the robbery. The next day, a police officer discovered $1,543 in cash in Crowe's possession. Days later, Wingate's fiancée deposited $3,000 in cash that she had received from Wingate.

[Mr. Crowe was acquitted of all charges relating to the second robbery.]

Crowe and Wingate reassembled the group with some new members and planned the third robbery: that of the Ferndale Pharmacy on July 11, 2011. Their main objective was to steal prescription drugs. Crowe gave a firearm to at least one of the group members for use in the robbery. Shortly before closing time, Wingate entered the pharmacy with one of the new coperpetrators, both carrying guns. Crowe remained across the street. Wingate went around the counter to obtain the drugs. At gunpoint, he ordered an employee to put prescription drugs into Wingate's bag. The employee dialed 911 and kept the call connected, with the cell phone in her pocket, while the robbery took place. Meanwhile, the other assailant placed the employees on the ground and tied their hands with zip ties. Carrying the bag filled with drugs, Wingate and the other man went toward the back door. Police officers arrived as they were exiting and, though the two men tried to run, they were soon arrested. Crowe escaped and fled the state but was later arrested in Arizona.

*Crowe*, 614 Fed. Appx. at 305-06.

## ANALYSIS

To succeed on a motion to vacate, set aside, or correct sentence, a movant must allege "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).

Petitioner contends that he was deprived of his Sixth Amendment rights to a fair trial by the inadequacy of his trial and appellate counsel and the misconduct of the prosecuting attorney.

## I. Ineffective Assistance of Trial Counsel

Mr. Crowe alleges a violation of his constitutional right to the effective assistance of counsel. To establish ineffective assistance of counsel, the movant must show that his counsel rendered deficient performance and thereby prejudiced the movant's defense so as to render the outcome of the proceedings unreliable. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first *Strickland* prong requires the movant to show that his counsel's representation "fell below an objective standard of reasonableness." *Id.* at 687. The second prong requires showing of prejudice: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 698.

### A. Counsel's Failure to Investigate and Obtain Relevant Telecommunications Records

Mr. Crowe argues that his defense counsel was inadequate because he did not obtain exculpatory telecommunication records pertaining to the July 11, 2011 Ferndale pharmacy robbery. In addition to testimony against him, and video of his car at the crime scene, Mr. Crowe had to defend against inculpatory evidence derived

from his cell-phone, number 313-412-1414. Cell-site data from his phone that indicated that he was in the vicinity of the robbery, and data from co-perpetrator's Christian Reid's phone that shows a phone call made the moment the police arrived on the scene. Mr. Crowe's defense was that his partner, Shurita Kennedy, had access to both his truck and his cell phone.

Pursuant to her plea agreement, Shurita Kennedy testified against Mr. Crowe at trial. Defense counsel cross-examined her on her use of Mr. Crowe's cell-phone, and established that she "sometimes used that phone and…drove that car." (Dkt. 194, pg. 82). Defense counsel returned to the cell phone later in the cross-examination and conducted the following colloquy.

> Q. Okay. And you -- the cell phone, the one that you sometimes used after you --
> A. I mean, I didn't use it like that. I ended up buying me another cell phone. So ...
> Q. Right. But you in fact used that cell phone. You said you used it to make calls.
> A. Yeah.
> Q. Right. The one you used to make calls. You know, would you just say to RJ, hey, I want to borrow the phone or would you just take it or how would it work?
>  It --
> Q. RJ is Raynard Crowe?
> A. Mm-hmm.
> Q. Yes? Could you say yes or no, please, for the record?
> A. Yes.
> Q. Thank you.
> Okay. How did it work about you using the phone?
> A. It didn't work like nothin'. I mean, I don't know, I just got the phone, asked for the phone. I don't remember.

Q. Because it was a casual, easy thing. You could just pick up the phone whenever you wanted, right?

A. I guess.

Q. All right. And the same with the car, you had your own set of keys, right?

A. When the car was there, yeah, I used the car. Yes.

(Id. at 138-39).

Defense counsel also cross-examined Ms. Kennedy on possible motives she might have for framing Mr. Crowe and her probity in general. The jury had every opportunity to consider the defense theory that Ms. Kennedy, not Mr. Crowe, was in possession of both Mr. Crowe's phone and his car at the time of the July 11, 2011 robbery. It rejected that theory nevertheless.

Mr. Crowe contends that the proceedings would have ended differently if the jury was presented with phone records from the phone number in his name, 313-648-8214. The government contends that this is in fact Ms. Kennedy's phone. Without further investigation, bringing phone records to the jury and asking them to decide which one belonged to Ms. Kennedy and which to Mr. Crowe might not have worked out in Mr. Crowe's favor. Indeed, at least one detail from the July 11, 2011 call-log of 313-648-8214 corroborates Ms. Kennedy's story. An incoming call was received from 313-412-1414 ten minutes after the robbery ended, at 7:09 p.m., which was around when Ms. Kennedy testified that Mr. Crowe called her to pick her up.

Defense counsel decided that instead of opening up a comparison inquiry into the call logs between the numbers, he would just establish a general pattern of Ms. Kennedy's usage of Mr. Crowe's phone, predicated on the assumption that Ms. Kennedy broke her phone at some point prior to the robbery. That this strategy was unsuccessful does not mean that Mr. Crowe was deprived ineffective assistance of counsel. The first prong of *Strickland* requires Mr. Crowe to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009). Counsel is not ineffective merely because he or she reasonably chose to adopt a trial strategy that ultimately failed. *See Strickland* at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.").

Mr. Crowe has not demonstrated that Defense counsel's strategy of creating reasonable doubt as to Mr. Crowe's ownership over the 313-412-1414 phone fell below an objective standard of reasonableness. Showing the jury call logs for both phones would have carried a different set of risks and a different set of rewards. There is no evidence that it would have been the better litigation strategy, nevermind the only reasonable litigation strategy.

B. Counsel's Failure to Call Jeanine Wright as a Witness

Mr. Crowe argues that his trial counsel's performance was deficient because he failed to call three witnesses that would offer exculpatory testimony. He has attached declarations by Felicia Thomas, Ginnesica Lawler, and Jeanine Wright. The Government has contested the authenticity of these declarations, but the Court will assume their authenticity, if not their accuracy, for the sake of this motion.

Ms. Wright, Mr. Crowe alleges, would have provided an alibi witness for his whereabouts on June 18, 2011, which was the date of the Medicap pharmacy robbery for which he was acquitted. Since Mr. Crowe was ultimately acquitted of this count, it is unclear how the proceedings would have been different had she testified. It is possible that she also would have testified in support of Mr. Crowe's position that he had switched phones, and that Ms. Kennedy, not he, was in possession of the phone that cell-site data put near the Ferndale pharmacy robbery.

Ms. Wright refused to testify however. This issue was brought up before the Court, in the jury's absence, before the Defense rested.

After receiving documentation from the Government indicating that it could refute Ms. Wright's alibi, Defense counsel advised Ms. Wright to seek advice of counsel. (Dkt. 197, pg. 63).

> I have spoken to this witness on several occasions, and she has been consistent in her statement to me, and I believed her to be an honest witness who I was prepared to call to the stand today. However, I did receive an e-

mail from the Government last evening which led me to believe that it was appropriate to advise Ms. Wright to seek counsel. So, I did.

(Id.).

Ms. Wright retained an attorney, who appeared before the Court before closing argument. The Assistant United States Attorney described his communication with defense and witness counsel as follows.

> Specifically, we have cell site location data from the telephone number 313-412-1414, which was written up on the board, which demonstrates that Mr. Crowe's telephone hit off the tower, the cell tower closest to Medicap Pharmacy on June 18th, 2011; further, that it hit off none of the cell towers claimed by Ms. Wright as to where he was that day.
> And we provided this to Mr. Nacht and suggested that he might -- that it might be relevant to him whether or not he calls this witness. I further told Mr. Nacht that, in my opinion, if he called the witness, he would not violate any lawful or ethical obligations, in my opinion; that he could conceivably call her and argue that what she would say would be correct.
> I've told Mr. Tuddles this morning that the Government is not asking her not to testify or to testify. I've told him that we're not stating that we would prosecute her for perjury or that we wouldn't prosecute her for perjury.
> Is that correct, Mr. Tuddles?

(Id. at 64).

Witness counsel responded, "that is correct" in response. (Id.). The parties then discussed with the Court the conflict between the cell-site data and Ms. Wright's proposed testimony. (Id. at 64-65). Defense counsel observed that such a conflict could be resolved by the defense theory that Ms. Kennedy had both Mr. Crowe's phone and his car.

Nevertheless, witness counsel asserted that Ms. Wright would plead the Fifth Amendment, if called to the stand. (Id. at 65-66). The Court noted that it could do nothing to force Ms. Wright to testify, if she invoked her Fifth Amendment rights. Defense counsel responded, "I don't believe I am allowed to call a witness for the purpose of simply taking the Fifth." (Id. at 66). He was correct. Nor would it have benefited Mr. Crowe to show the jury a witness refusing to testify on his behalf.

C. Counsel's Failure to Investigate Felicia Thomas and Ginnesica Lawler

Trial counsel has a duty to "explore all avenues leading to facts relevant to the merits of the case." *Rompilla v. Beard*, 545 U.S. 374, 387 (2005). That duty "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005); *see also Strickland*, 466 U.S. at 691 ("Counsel has the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.").

Petitioner claims that his attorney never interviewed Felicia Thomas or Ginnesica Lawler. Ms. Thomas' declaration avers that she was with Petitioner on July 11, 2011 between 6:30 PM and 8:00 PM, at the time of the Ferndale Pharmacy robbery. Ms. Lawler's declaration avers that Ms. Kennedy was in possession of both Mr. Crowe's truck and his phone on July 11, 2011.

The idea that Defense counsel somehow ignored these exculpatory witnesses, who could have seriously contested Mr. Crowe's involvement in the Ferndale robbery, is not persuasive. Mr. Crowe was so deeply and personally involved in his case throughout his trial that he repeatedly voiced his concerns to the Court about precise details in the investigation (e.g., a witness's missing glasses), requested to cross-examine witnesses when he felt that his counsel was not asking the right questions, and even delivered his own closing argument. He was, in short, not the sort of defendant who would let his attorney neglect to investigate two alibi witnesses and not mention it during his many colloquies with the Court.

Defense counsel made a sound trial strategy to keep details about the cell phone and the truck as vague as possible. This vagueness put the burden on the Government to prove that Ms. Kennedy would definitely not have been using Mr. Crowe's phone number or truck on July 11, 2011. It also preserved the defense's credibility, which was likely instrumental in Mr. Crowe's acquittal of the June 18, 2011 Medicap robbery. Lining up witnesses whose testimony would have run counter to the weight of the evidence, and whose cross-examination would have opened up gaps in the defense's Kennedy-Crowe phone-swap and truck-swap theory, would have brought great risks to the defense. Defense counsel's decision not to rely on these witnesses, to the extent that they existed, did not fall below an "objective standard of reasonableness."

D. <u>Counsel's Failure to Object to the Government's Incomplete Disclosure of Video Evidence</u>

Mr. Crowe argues that the government suppressed exculpatory material in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Though this argument is couched in terms of trial counsel's failure to object to the allegedly incomplete introduction of video surveillance footage, Defense counsel raised this issue at the end of trial, which was denied by the Court. After trial he filed a Motion for a Hearing on *Brady* Violations that concerned, among other things, the footage from outside the July 11, 2011 Ferndale pharmacy robbery. (Dkt. 170). Mr. Crowe's theory now is as it was then: that had the jury seen the video from earlier in the day, they would have not seen Mr. Crowe's car, and that this would have impeached testimony that he passed by the pharmacy to case it out earlier on July 11. The Court, in denying the motion, concluded simply that "Defendant fail[ed] to show that such a video exists." (Dkt. 186 pg. 9). No further evidence has been produced to suggest its existence.

Defense counsel's performance was adequate, except where he neglected to mention a recent Supreme Court decision directly applicable to his client's sentencing. See *infra* at pg. 15. During February 2012, he filed a Motion to Dismiss [83] on Commerce Clause grounds, a Motion to Sever [91], and a Motion to Quash [92]. After those were denied, he filed several motions in limine [127, 129, 130, 131,

152] through late 2012 and early 2013. He zealously defended Mr. Crowe through trial, won a partial acquittal, and preserved his objections to adverse rulings in a motion for a new trial [169] on April 4, 2013. The Brady motion, though unsuccessful, culminated a year-and-a-half of vigorous advocacy. The record suggests that Mr. Crowe's trial was a hard-fought contest between prosecution and defense that provided him with ample opportunities to challenge the evidence against him.

## II. Prosecutorial Misconduct

To prove prosecutorial misconduct, a habeas petitioner must show that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

Mr. Crowe argues that the prosecutor threatened to charge Ms. Wright with perjury if she testified for the defense. Mr. Crowe had a right to present witnesses to establish his defense, "and this right precludes prosecutors and judges from improperly threatening witnesses with perjury prosecution*." United States v. Stuart*, 507 F.3d 391, 398 (6th Cir. 2007) (citing *Washington v. Texas*, 388 U.S. 14, 19 (1967)) and *Webb v. Texas*, 409 U.S. 95, 97-98 (1972). As the Sixth Circuit has cautioned, however, "*Webb*, however, does not stand for the proposition that merely warning a witness of the consequences of perjury demands reversal." *United States*

*v. Pierce*, 62 F.3d 818, 832 (6th Cir. 1995) (holding that the government may even have an obligation to warn unrepresented witnesses of the risk of perjury charges). "To establish a claim of witness intimidation…defendants must present 'government conduct which amounts to substantial interference with a witness's free and unhampered determination to testify' and must prove that any inappropriate conduct was not harmless." *Stuart*, 507 F.3d at 398. (quoting *United States v. Foster*, 128 F.3d 949, 953 (6th Cir. 1997).

Mr. Crowe does not meet this standard. He did not show that the prosecutor substantially interfered with Ms. Wright's decision on whether or not to testify. He does nothing to refute the prosecutor's representation before the Court that he neither threatened perjury nor promised immunity from perjury. Ms. Wright's attorney agreed on the record with the prosecutor's statement, "the Government is not asking her not to testify or to testify…I've told him that we're not stating that we would prosecute her for perjury or that we wouldn't prosecute her for perjury." (Dkt. 197, pg. 64). This is different than the prosecutorial misconduct found where, for instance, a prosecutor told a witness that she was going to prosecute her if she testified, in order to secure her silence. *See United States v. Golding*, 168 F.3d 700, 703 (4th Cir. 1999). Aware of the risks of perjury to any party that testifies to falsehoods under oath, Ms. Wright invoked her Fifth Amendment privilege against self-incrimination. The existence of a criminal perjury statute does not cause a

prosecutor to commit misconduct whenever he provides a witness's attorney with evidence contradicting her proposed testimony, even if perjury is mentioned.

Nor does a witness's invocation of the Fifth Amendment violate a Defendant's Sixth Amendment rights to a fair trial. "A defendant's right of confrontation and compulsory process under the Sixth Amendment is not violated when a witness invokes her right against self-incrimination under the Fifth Amendment." *United States v. Scantland*, 2010 U.S. Dist. LEXIS 142913, *68 (E.D. Mich. Dec. 7, 2010) (citing *United States v. Dago*, 813 F. Supp. 736, 746 (D. Colo. 1992), *aff'd*, 33 F.3d 63 (10th Cir. 1994)). A witness's fear of being charged with perjury—absent some evidence of undue prosecutorial pressure, misrepresentation of the evidence, or other misfeasance—does not deprive a defendant of his Sixth Amendment rights.

## III. Ineffective Assistance of Appellate and Trial Counsel Regarding Flawed Jury Instructions

"The familiar two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), governs claims of ineffective assistance of counsel." *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013). As with evaluating the adequacy of trial counsel, "the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id*. (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)).

Mr. Crowe received a mandatory minimum sentence of seven-years (84 months) for his conviction of Count 3 of the Superseding Indictment (the conviction for using or carrying a firearm during the May 18, 2011 Citizens Bank robbery). Under 18 U.S.C. § 924(c)(1)(A), that offense carries a minimum seven-year sentence "if the firearm is brandished," but otherwise only a five-year minimum. The law on who—judge or jury—was required to make the factual finding as to brandishing changed between trial and sentencing.

Mr. Crowe was convicted on March 21, 2013. At the time, 924(c)'s two-year increase in the mandatory minimum for brandishing a firearm was considered a sentencing enhancement, not a separate element, and could be found and applied by a preponderance of evidence by a sentencing court. *See Harris v. United States*, 536 U.S. 545 (2002). Consistent with this precedent, the jury was never asked to make a finding as to brandishing. On May 3, 2013, a presentence investigation report ("PSR") prepared for the Court observed that 18 U.S.C. § 924(c)(1)(A)(ii) mandated a seven-year minimum sentence because "a firearm was possessed and brandished in relation to a crime of violence." (PSR ¶ 55).

This statement became incorrect on June 17, 2013, when the Supreme Court overruled *Harris* in *Alleyne v. United States*, 570 U.S. 99 (2013). The Court held that because brandishing a firearm in violation of § 924(c) carried an additional two-year mandatory minimum, it was an independent element of the crime and therefore

must be found by a jury at trial not a judge at sentencing. *Alleyne*, 570 U.S. at 115 ("because the fact of brandishing aggravates the legally prescribed range of allowable sentences, it constitutes an element of a separate, aggravated offense that must be found by the jury, regardless of what sentence the defendant might have received if a different range had been applicable.") Nevertheless, Mr. Crowe's counsel didn't object to the PSR, conceded the seven-year mandatory minimum in his June 19, 2013 sentencing memorandum, and didn't raise the issue orally on June 29, 2013, twelve days after *Alleyne*, when the Court sentenced Mr. Crowe to the supposed mandatory minimum of seven years on his first enhanced armed robbery conviction. (Dkt.181 pg. 2; Dkt. 200 pg. 20).

An attorney acts unreasonably when he fails to raise a Supreme Court decision that directly reduces a client's sentence. Mr. Crowe meets the first prong of *Strickland*. The *Alleyne* Court explicitly ruled that an incorrect determination of a mandatory minimum violated the Sixth Amendment, even though the district court (as in this case) would have remained free to sentence Mr. Crowe for 7 years on Count 3 without the mandatory minimum. Since Mr. Crowe was sentenced to the mandatory minimum on several other counts, it is more likely than not that he was prejudiced by the additional two-year mandatory minimum.

As to appellate counsel's adequacy, Mr. Crowe's appellate counsel failed to mention the brandishing enhancement in his brief. Like trial counsel, he conceded

off-handedly that it carried a seven-year mandatory minimum. (Case No. 13-1892, Dkt. 58, pg. 6). Only after oral argument did appellate counsel move to adopt Mr. Wingate's briefing as to the brandishing enhancement. The Government conceded, and the Court of Appeals agreed, "that the district court's failure to submit the brandishing element to the jury was error and that the error is plain." *Crowe*, 614 Fed. Appx. at 311. This established the first two prongs of the plain-error review, leaving only the question of "whether the error affected the defendants' substantial rights." *Id*. The panel only reached that question as to Mr. Wingate, however. It found that Mr. Crowe's adoption of Mr. Wingate's briefing was too little too late.

> Although Crowe did not develop this argument in his brief on appeal or at oral argument, he did submit a motion after oral argument, pursuant to Federal Rule of Appellate Procedure 28(i), to adopt the arguments that Wingate made on this point. We decline to grant Crowe's motion. With respect to those counts, Crowe, who did not personally brandish a gun, was convicted under an aiding-and-abetting theory of liability. Wingate, on the other hand, was convicted as a principal. These theories of liability are substantially different from one another, and would require us to undertake a different form of legal analysis. We think that it is inappropriate for us to analyze an issue that has not been briefed by the parties and that was not discussed at oral argument. If Crowe wanted us to undertake an aiding-and-abetting harmless-error analysis with respect to his section 924(c) convictions, he should have properly raised the issue.

Crowe, 614 Fed. Appx. at 313 (citations omitted).

The government in its response to Mr. Crowe's § 2255 motion doesn't contest that appellate counsel's omission fell below an objective standard of reasonableness. It contests only that Mr. Crowe was prejudiced by the omission.

Mr. Crowe was certainly prejudiced by the omission, for in the interim between his sentencing and his appeal, the Supreme Court issued a ruling clarifying aider-and-abettor liability in his favor. *See Rosemond v. United States*, 572 U.S. 65 (2014) (holding that proof of intent "must go to the specific and entire crime charged"). Unlike Mr. Wingate—who was clearly on video brandishing a weapon— Mr. Crowe could only be convicted of brandishing a firearm under an aider-and-abettor theory of liability. An aider-and-abettor must have intent for the commission of the entire crime.

In the context of § 924(c) cases, a jury must find beyond a reasonable doubt that an aider-and-abettor had advanced knowledge of all the elements of the crime. *Rosemond*, 572 U.S. 65. The jury clearly found that Mr. Crowe knew that the principals were carrying firearms: they convicted him of being a felon-in-possession of a firearm. It cannot be said, however, that they certainly would have found that Mr. Crowe knew that the principals would brandish their weapons during the robberies. The jury acquitted Mr. Crowe of several counts, and clearly rejected at least some of the government witness's testimony.

Had Mr. Crowe's appellate counsel properly briefed the issue, it is unlikely that the Court of Appeals would have been able to find "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Crowe*, 614 Fed. Appx. at 311-313 (quoting *Mack*, 729 F.3d at 608). There are scenarios where

an aider-and-abettor could be found to have provided firearms to a principal to use or carry in the commission of a crime, but without knowing in advance that they would be brandished. "Brandishing," after all, refers to "a more egregious form of 'using' such a weapon." *United States v. Bowen*, 527 F.3d 1065 (10th Cir. 2008) (citing *Bailey v. United States*, 516 U.S. 137 (1995)). As *Rosemond* made clear the year before Mr. Crowe's appeal was decided, "for purposes of aiding and abetting law, a person who actively participates in a criminal scheme knowing its extent and character intends that scheme's commission." 572 U.S. at 77.

The inquiry into whether an aider-and-abettor is liable for a principal's use of a firearm is whether he had "advanced knowledge…that enabled him to make the relevant legal (and indeed, moral) choice" between continuing with a criminal venture of withdrawing. *Id*. at 78. Two months after the Sixth Circuit affirmed Mr. Crowe's conviction, it reversed a § 924(c) conviction for using jury instructions found deficient by *Rosemond*, even where, as in this case, the trial took place before *Rosemond* was decided. *See United States v. Henry*, 797 F.3d 317, 374-75 (6th Cir. 2015) (finding jury instructions that permitted a § 924(c) aider-and-abettor conviction were insufficient where they didn't require finding advance knowledge that the principal would possess a firearm). There is no meaningful distinction between jury instructions that fail to make clear the "advance-knowledge requirement" as to firearm possession and those that fail to make clear the "advance

knowledge requirement" as to firearm brandishing. Had Mr. Crowe's appellate counsel properly raised the issue, the sentencing Court would likely have been reversed as to the brandishing enhancement.[1]

<h2 style="text-align:center">CONCLUSION</h2>

Mr. Crowe has not made a showing that his trial counsel was inadequate for failing to call certain witnesses. Nor has he made a showing that the prosecutor violated his Sixth Amendment rights by refusing to immunize a potential witness from perjury charges.

He has demonstrated, however, that his Sixth Amendment rights were violated by his attorneys', and the Court's, improper application of the seven-year mandatory minimum for brandishing a firearm under 18 U.S.C. § 924(c)(1)(A). This is the only portion of Mr. Crowe's motion that will be granted. Pursuant to 28 U.S.C. § 2255(b), the Court may choose from among four forms of relief: it may "discharge the prisoner, resentence the prisoner, grant a new trial, or correct the sentence." *Ajan v. United States*, 731 F.3d 629, 633 (2013). § 2255 "gives district judges wide berth in choosing the proper scope of post-2255 proceedings." *Id.* (quoting *United States v. Jones*, 114 F.3d 896, 897 (9th Cir. 1997)). Nevertheless, "in cases where the

---

[1] By contrast, jury instructions have found to be sufficient for the seven-year mandatory minimum where they specifically ask if the aider-and-abettor had advance knowledge that firearms would be brandished. *See e.g.*, *United States v. Johnson*, 702 Fed. Appx. 349, 359 (2017).

sentence (but not the conviction) is infirm, only the 'resentencing' or 'correcting the sentence' options are open to the district court, since a prisoner should never be 'discharged' or 'granted a new trial' based solely on a defective sentence." *United States v. Torres-Otero*, 232 F.3d 24, 30 (1st Cir. 2000). The Court finds resentencing the appropriate remedy. Rather than attempt to offset the elements of the original sentencing that were prejudiced by errors about aider-and-abettor liability, the Court will resentence Mr. Crowe on all counts.

Accordingly,

**IT IS ORDERED** that Movant's Motion to Vacate Sentence [237, 270] is **GRANTED IN PART AND DENIED IN PART**. The motion is denied with respect to all arguments except Movant's argument that his trial and appellate counsel were constitutionally inadequate for failing to object to his § 924(c) enhanced mandatory minimum sentence for brandishing.

**IT IS FURTHER ORDERED** that the United States Probation Officer prepare an updated Presentence Investigation Report by **May 31, 2019**.

**IT IS FURTHER ORDERED** that the parties file new or supplemental sentencing memoranda by **June 21, 2019**.

**IT IS FURTHER ORDERED** that Mr. Crowe will be **RESENTENCED** on **July 10, 2019 at 3:00 p.m.** Mr. Crowe's new sentence will completely vacate and replace the original sentence.

**IT IS FURTHER ORDERED** that Movant's request for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED** that Movant is **DENIED** a certificate of appealability under 28 U.S.C. § 2253(c)(2) because it is unlikely that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Dated: April 16, 2019                    Senior United States District Judge