20

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**RAYNARD VERSATIL CROWE**
    DEFENDANT/MOVANT,

vs.

CASE NO.: # 2:11-CR-20481-AJT-MKM
JUDGE Arthur J. Tarnow

**UNITED STATES OF AMERICA,**
    RESPONDENT/PLAINTIFF,

"MOVANT RAYNARD VERSATIL CROWE'S PRO-SE MOTION FOR REDUCTION OF SENTENCE OF HIS TERM OF IMPRISONMENT TO REFLECT HOME CONFINEMENT PURSUANT TO TITLE 18 U.S.C. § 3582(c)(1)(A)(i); FIRST STEP ACT OF 2018; THE PUBLIC HEALTH CRISIS CREATED BY COVID-19: AND THE "EXTRAORDINARY AND COMPELLING" NATURE OF CHANGES IN FEDERAL LAW"

TO THE HONORABLE JUDGE ARTHUR J. TARNOW:

    **COMES NOW**, Raynard Versatil Crowe, ("**MOVANT**"), appearing herein before this Honorable Court in a pro-se capacity and urgently moves this Honorable Court pursuant to: 18 U.S.C. § 3582(c)(1)(A)(i); First Step Act of 2018; the Cares Act of 2020; the public health crisis created by COVID-19; and the "extraordinary and compelling" nature of numerous changes in federal law, which collectively demonstrate that Movant Crowe is curently eligible to serve the remainder of his sentence in "home confinement" due to an acute problem of COVID-19 at the FCC-Terre Haute United States Penitentiary where he is currently executing the final portion of his 132 term of imprisonment recently imposed by this same Court on September 24, 2019.

    In legal support thereof Movant Raynard Versatil Crowe, will unequivocally show unto this Honorable Court the following:

"INTRODUCTION"

    Movant Raynard Versatil Crowe is currently before this Honorable Court in a pro-se capacity and hereby formally requests that his pro-se pleading(s) be liberally construed. See; <u>HAINES vs. KERNER</u>, 404 U.S. 519, 520-521, 30 L.Ed.2d 652 (1972).

## "PROCEDURAL HISTORY"

On March 21, 2013, a jury conviced Movant Raynard Versatil Crowe, of the following: "conspiracy", bank robbery, pharmacy robbery, using or carrying a firearm during a "crime of violence", and felon in possession of a firearm. [D.E. # 159] The Court initially sentenced Movant Crowe to 535 months (44 years and 7 months) in prison on June 26, 2013. [D.E. # 183]. The U.S. Sixth Circuit Court of Appeals affirmed the conviction and sentence on June 8, 2015. See; U.S. vs. Crowe, 614 Fed. App'x. 303 (6th Cir. 2015). The U.S. Supreme Court denied Mr. Crowe's "Petition for Writ of Certiorari" on March 9, 2016. Crowe vs. U.S., 136 S.CT. 1364 (2016).

On June 27, 2016, Movant Crowe filed a timely 28 U.S.C. § 2255-Motion to Vacate, Set Aside, or Correct Sentence On April 16, 2019, this Honorable Court granted in part and denied in part, the aforementioned § 2255, and a re-sentencing hearing was ordered.

On September, 24, 2019, this Honorable Court sentenced Movant Crowe to an aggregate term of 132 months of imprisonment. No other appeals of this judgment have been made and Movant Crowe, files the present motion on the basis of an unforeseen and unprecedented health crisis which has directly affected the entire country.

## "JURISDICTION"

<u>18 U.S.C. § 3582(c)(1)(A)(i):</u>

> Section § 3582(c)(1)(A)(i)---
> > (C)-Modification of an imposed term of imprisonment. The Court may not modify a term of imprisonment once it has been imposed, except that----
> > (1) in any case---
> > (A) the Court, upon motion of the Director of the Federal Bureau of Prisons, may reduce the term of imprisonment ("and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment"), after considering the factors set forth in Section 3553(a) to the extent that they are applicable, if it finds that---
> > > (i.) "extraordinary and compelling reasons" warrants such a reduction;
>
> 18 U.S.C. § 3582(c)(1)(A)(i)(2018)

The First Step Act of 2018, amended numerous provisions of the U.S. Code to promote rehabilitation of prisoners and to unwind decades of mass incarceration. Cong. Research Serv., R45558, The First Step Act of 2018; An Overview 1 (2019). Congress designed the provision at issue here, § 3582(c)(1)(A)(i), for "Increasing the Use & Transparency of Compassionate Release". § 603(b), 132 STAT. at 5239. Section 3582(c)(1)(A)(i), allows defendants, for the first time, to petition district courts directly for compassionate release. Id. Under the old regime, defendants could petition only the FBOp Director, who could then make a motion, at his/her discretion to the district court. see; U.S. Sentencing Guidelines Manual § 1B1.13, cmt.n.4 (U.S. Sentencing Comm 2018[hereinafter U.S.S.G.]. The FBOP Director rarely did so. Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Commission (2016) ("Statement of U.S. Inspector General, Mr. Michael E. Horowitz")

## A. EXHAUSTION OF ADMINISTRATIVE REMEDIES:

The First Step Act created two ways by which a defendant can bring a compassionate release motion to a district court. The defendant may file a motion once he/she has fully exhausted all administrative rights to appeal a failure of the [FBOP] to bring a motion on the defendant's behalf or lapse of 30 days from the reciept of such a request by the warden of the defendants institution/facility, whichever is earlier". 3582 (c)(1)(A)(i) (2018). With the second path, the statute's plain text states only that 30 days must pass after the defendant's request for compassionate release from the warden. No more, no less! See; U.S. vs. GILENO, NO.: # 3:19-CR-161-(VAB)-1, 2020 U.S. Dist. LEXIS 67729 (D.CONN. 3/19/2020); U.S. vs. ATWI, NO.: # 18-20607 (6th Cir. 2020). The statute's text does not place a time limit on the defendant's ability to sue nor does it state that the reasons presented to the warden must mirror those presented to the district court. Here, the record will unequivocally reflect that Movant Raynard Versatil Crowe's motion pursuant to 18 U.S.C. 3582(c)(1)(A)(i), meets the requirement lapse of 30 days from reciept by the warden of the defendant's facility. [See; Exhibit-A, Attached

hereto]. This Honorable Court therefore, has the requisite authority and jurisdiction by which to grant the relief being sought by the defendant.

B. COVID-19 PANDEMIC:

As this Honorable Court is aware, the Country faces an unpredented challenge from the coronavirus (COVID-19) pandemic. Those detained in jails and prisons face particularly grave danger. Jails and prisons are known to be a powder keg for infection and easy transmission of such a deadly contagion. People in jails and prisons, cannot practice social distancing; control their exposure to large groups; practice increased hygiene; wear protective clothing; obtain specific products for cleaning and laundry; avoid frequently touched surface's; or sanitize their own environment. "Realistically, the best---perhaps the ony way---to mitigate the damage and reduce the death toll is to decrease the jail and prison population by releasing as many people as possible. See; **U.S. vs. NAKANG**, Cr.No.: # 18-CR-713, 2020 U.S. Dist. Lexis 56188,at *1 (S.D.NY. March 31, 2020).

"C. "EXTRAORDINARY AND COMPELLING REASONS:

Generally, more and more courts have found that exceptional rehabilitation; large sentencing disparities; and COVID-19's unprecedented dangers all constitute "extraordinary and compelling reasons" to grant compassionate release. Here, a global pandemic which endangers all prisoners and especially Movant Crowe, shall suffice. In fact, the facility where Movant Crowe is presently housed---FCC Terre Haute---is suffering from an acute COVID-19 problem, which has already resulted in one inmate death and approximately 7-10 positive COVID-19 cases, yet no massive or general population testing has been conducted. [see; Exhibit-B, Attached hereto]

(i.)-Rehabilitation:

"Rehabilitation of a defendant alone shall not be considered sufficiently.... "extraordinary and compelling"....enough to justify compassionate release. § 994(t). For the word 'alone" to do any work--as it must---that means the court can consider

rehabilitation as part of a compassionate release motion. Cf. CORLEY vs. U.S., 556 U.S. 303, 314, 129 S.CT. 1558, 173 L.ed.2d 443 (2009)("stating that a statute should be construed so that effect is given to all it's provisions")("Qouting: HIBBS vs. WINN, 542 U.S. 88, 124 S.CT. 2276, 159 L.Ed.2d 172 (2004). Several courts have concluded that, and duly considered a defendant's rehabilitation in granting compassionate release". Eg. U.S. vs. MARKS, NO.: # 03-CR-6033L, 2020 Wl 1908911, at*7 (W.D. NY April 20, 2020)

In essence, to say that Movant Raynard Versatil Crowe, has been a model inmate is understatement. To pick a few of the Federal Bureau of Prisons, accomplishment(s):

> ****Life Connections Program Completion/Certificate;
> ****Continued "excellent work evaluations in light of pandemic;
> ****12 ACE classes; and more importantly, an effort to make restitution payment in light of not having to participate until release from custody.

In the last 9 years of consecutive incarceration, Mr. Crowe has maintained an exemplary prison record. [See; Inmate Progress Report; Exhibit(s) # C ;Attched hereto]. These FBOP records will further show that Movant Crowe has participated and successfully completed over 12 programs; Computer Vocational training; and participated in the Life Connections Program; and more importantly has developed a very strong and trustworthy chemistry between himself and the inmate population. Thus, the FBOP records, collectively tilt in favor of granting Mr. Crowe's "compassionate release".

## "HOME CONFINEMENT/RESIDENTIAL RE-ENTRY CENTER PLACEMENT:

Pursuant the CARES ACT of 2020, Public Law # 116-136, the Federal Bureau of Prisons is authorized to place prisoners in a "Residential Re-Entry Center"-("RRC") and/or on "home confinement" at the end of their respective sentence's. In fact, the CARES ACT permits the Director of the FBOP to extend the maximum amount of time for which a prisoner may be placed on home confinement under Section 3624(c)(2) under certain circumstances. Under 18 U.S.C. § 3624(c), the FBOP is authorized to place a prisoner in a "RRC" for up

12 months at the end of his/her sentence. The authority under the "CARES ACT" is limited to the "covered emergency period", which is defined as the period spanning from the U.S. President's declaration of a national emergency with respect to COVID-19 to the date that is 30 days after the date on which the declaration terminates.

Accordingly, in the present case, Movant Crowe has an expected release date via good conduct of March 30, 2021, for which he is expected to be considered for "RRC"-Center placement and/or "home confinement" with a 17-24 month period before the scheduled release under the dictates of the Second Chance Act, Public Law # 110-199, effective on April 9, 2008. However due to the public health crisis and the unprecedented changes which have been unexpectedly come into play, Movant Crowe is today sitting in a facility which has an acute COVID-19 problem and resulted in at least: one death and 10-14 positive cases, which because of a lack of general testing has been arbitraily unreported. In fact, a public records check, will unequivocally reflect that FCC-Terre Haute, namely; Unit(s) #B1-B2, unoccupied units atthis facility have been turned into make-shift transportation and quarantine hubs, whereby the FBOP is sending inmates in transfer to FCC-Terre Haute to be housed until they either; go through the symptom process and can test negative, or until they can reach their desired destination. In essence, the FBOP has disregarded the orders previously imposed, with respect to no transfer(s) and continues to place those housed within FCC-USP Terre Haute in jeopardy of losing their life and/or of putting their health in danger. [See; OSHA Complaint by Shane Fausey, Attached hereto] Currently, inmates at FCC-Terre Haute, have been denied appropiate PPE; cleaning supplies; medical treatment; general testing; and more importantly, an assurance that the FBOP is honoring their constituitional rights to be free of imminent danger due to this deadly contagion. Here, Movant Crowe respectfully urges this Honorable Court to find that "extraordinary and compelling reasons" exist which warrant this Honorable Court to enter an order granting his motion pursuant to 18 U.S.C. 3582(c)(1)(A)(i),and ordering the Federal Bureau of Prisons, to release Movant Crowe to "home confinement" for the remaining 7-8 months which

he otherwise would have recieved under the "RRC" considerations of the Second Chance Act of 2008.

In essence, none of the formal recommendations made by the Honorable Judge Arthur J. Tarnow, such as programming in the RDAP and/or vocational training has been placed on hold due to the crisis, and as such....Movant Crowe is presently sitting in a facility with Care Level-3 medical conditions which could turn out to be a tinderbox for infection. No protective measures have been instuted to assure one's survival from a possible massive outbreak and Movant Crowe hereby respectfully urges this Honorable Court to issue an order, requesting that he be immediately released to "home confinement", whereby he can obtain appropiate medical care in case of any adverse situation; whereby he can start upon his desired goals of attending his truck driving school vocational training; and more importantly, because he has served the lion's share of his sentence, and but for the same pandemic crisis....would otherwise be considered for "RRC" placement....as of this filing. Because Movant Crowe has approximately 7-8 months remaining on his sentence, and because this Honorable Court possesses the requisite authority....Movant Crowe hereby urgently requests that this Honorable Court convert the remaining time on his sentence to "home confienment". Movant Crowe is not opposed to having to serve the remainder of his sentence on GPS monitoring or under any other restrictive measures this Honorable Court may deem neccessary. [See; Exhibit-D, Attached hereto]

RELEASE PLAN:

If indeed this Honorable Court were to elect to reduce Movant Crowe's term of imprisonment to time served and/or to convert the remaining 7-8 months of his sentence to a term of home confinement, his term of supervised release remains at three (3) years and is subject to the terms of any new judgment, to include; GPS monitoring. However, Mr. Crowe, further notifies this Honorable Court that if he were to be released immediately he will have a home living with: Ms. Stephanie McKnight, 20031 Kentucky Street, in Detroit, Michigan. In fact, Movant Crowe is currently fortunate enough to have the neccessary

-7-

finanical means and/or resources to start his truck driving school upon his immediate release the following week of release and thereby obtain meaningful employment. Given the circumstances, it seems adequate and appropiate...with the public health crisis and it's many obstacles....that Mr. Crowe be ordered to quarantine upon release and be tested thereafter, and adapt accordingly thereafter. Movant Raynard Versatil Crowe, respectfully advances that he will act prudently, with the public's health concerns in mind, and he re-enters society, if indeed given the oppurtunity, he so desperately seeks.

## "CONCLUSION"

**WHEREFORE**, Movant Raynard Versatil Crowe, hereby respectfully and urgently requests that this Honorable Court "GRANT" his motion pursuant to 18 U.S.C. 3582(c)(1)(A)(i). In light of the First Step Act of 2018, this Honorable Court now possesses the requisite authority to "GRANT" Mr. Crowe's motion for reduction of his sentence in light of the COVID-19 acute problem at his current place of incarceration.

Respectfully submitted,

_Raynard Crowe_
Mr. Raynard Versatil Crowe, pro-se
Reg.No.: # 49984-308
United States Penitentiary Terre Haute
P.O. BOX 33
Terre Haute, IN 47808

***NOTE: Release Plan Information:

Ms. Stephanie McKnight (Cousin/Family)
20031 Kentucky Street
Detroit, MI 48221
Phone: (313)758-9752

## "CERTIFICATE OF SERVICE"

I, hereby affirm attest, and certify that a true and correct copy of the foregoing:

<u>"MOVANT RAYNARD VERSATIL CROWE'S PRO-SE MOTION FOR REDUCTION OF SENTENCE OF HIS TERM OF IMPRISONMENT TO REFLECT HOME CONFINEMENT PURSUANT TO TITLE 18 U.S.C. 3582(c)(1)(A)(i); FIRST STEP ACT OF 2018; THE PUBLIC HEALTH CRISIS CREATED BY COVID-19: AND THE "EXTRAORDINARY AND COMPELLING NATURE OF CHANGES IN FEDERAL LAW"</u>

which is deemed legally filed at the time it was delivered to prison officials for forwarding [<u>HOUSTON vs. LACK</u>, 101 L.Ed. 2d 245] and served upon the Respondent(s) and his/her attorney of record---by placing same in a postage pre-paid envelope addressed to the following parties:

U.S. DISTRICT COURT
OFFICE OF THE CLERK
231 W. Lafayette Blvd.
Detroit, MI 48226

U.S. ATTORNEYS OFFICE
211 W. FORT STREET, STE.#2001
Detroit, MI 48226-3211

and thereby placing same pleading as "legal mail" affixed mail in the U.S. Mail at the Federal Correctional Complex-United States Penitentiary Terre Haute, P.O. Box 33, in Terre Haute, IN 47808, on this _10_ day of August, 2020.

Respectfully submitted,

/s/ Raynard Crowe

Mr./Raynard Versatil Crowe, Pro-se
Federal Correctional Complex
United States Penitentiary-Terre Haute
P.O. Box 33
Terre Haute, IN 47808

Crowe, Raynard
49984-308
A-2

## COVID-19 / DIRECT HOME DETENTION REVIEW

You were determined to be ineligible for direct home detention because you do not meet the following condition(s):

- Has no public safety factors;
- Who is not less than 60 years of age;
- The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities;
- The inmate's score under PATTERN, with inmates who have anything above a low score not receiving priority treatment under this Memorandum;

The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates. We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. However, your concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence. Accordingly, your request is denied at this time.

If you are not satisfied with this response to your request, you may commence an appeal of this decision via the administrative remedy process by submitting your concerns on the appropriate form (BP-9) within 20 days of the receipt of this response.

_____          7/7/20
T.J. Watson, Complex Warden              Date

'EXHIBIT-A"

U. S. Department of Labor
Occupational Safety and Health Administration

# Notice of Alleged Safety or Health Hazards

### For the General Public:

This form is provided for the assistance of any complainant and is not intended to constitute the exclusive means by which a complaint may be registered with the U.S. Department of Labor.

Sec. 8(f)(1) of the Williams-Steiger Occupational Safety and Health Act, 29 U.S.C. 651, provides as follows: Any employees or representative of employees who believe that a violation of a safety or health standard exists that threatens physical harm, or that an imminent danger exists, may request an inspection by giving notice to the Secretary or his authorized representative of such violation or danger. Any such notice shall be reduced to writing, shall set forth with reasonable particularity the grounds for the notice, and shall be signed by the employee or representative of employees, and a copy shall be provided the employer or his agent no later than at the time of inspection, except that, upon request of the person giving such notice, his name and the names of individual employees referred to therein shall not appear in such copy or on any record published, released, or made available pursuant to subsection (g) of this section. If upon receipt of such notification the Secretary determines there are reasonable grounds to believe that such violation or danger exists, he shall make a special inspection in accordance with the provisions of this section as soon as practicable to determine if such violation or danger exists. If the Secretary determines there are no reasonable grounds to believe that a violation or danger exists, he shall notify the employees or representative of the employees in writing of such determination.

NOTE: Section 11(c) of the Act provides explicit protection for employees exercising their rights, including making safety and health complaints.

### For Federal Employees:

This report format is provided to assist Federal employees or authorized representatives in registering a report of unsafe or unhealthful working conditions with the U.S. Department of Labor.

The Secretary of Labor may conduct unannounced inspection of agency workplaces when deemed necessary if an agency does not have occupational safety and health committees established in accordance with Subpart F, 29 CFR 1960; or in response to the reports of unsafe or unhealthful working conditions upon request of such agency committees under Sec. 1-3, Executive Order 12196; or in the case of a report of imminent danger when such a committee has not responded to the report as required in Sec. 1-201(h).

## INSTRUCTIONS:

Open the form and complete the front page as accurately and completely as possible. Describe each hazard you think exists in as much detail as you can. If the hazards described in your complaint are not all in the same area, please identify where each hazard can be found at the worksite. If there is any particular evidence that supports your suspicion that a hazard exists (for instance, a recent accident or physical symptoms of employees at your site) include the information in your description. If you need more space than is provided on the form, continue on any other sheet of paper.

After you have completed the form, return it to your local OSHA office.

NOTE:  It is unlawful to make any false statement, representation or certification in any document filed pursuant to the Occupational Safety and Health Act of 1970. Violations can be punished by a fine of not more than $10,000, or by imprisonment of not more than six months, or by both. (Section 17(g))

Public reporting burden for this voluntary collection of information is estimated to vary from 15 to 25 minutes per response with an average of 17 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. An Agency may not conduct or sponsor, and persons are not required to respond to the collection of information unless it displays a valid OMB Control Number. Send comment regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to the Directorate of Enforcement Programs, Department of Labor, Room N-3119, 200 Constitution Ave., NW, Washington, DC; 20210.

OMB Approval# 1218-0064, Expires: 11-30-2020

Do not send the completed form to this Office.

OSHA-7(Rev. 9-93)

# U. S. Department of Labor
Occupational Safety and Health Administration

## Notice of Alleged Safety or Health Hazards

| | | Complaint Number | |
|---|---|---|---|
| Establishment Name | FEDERAL BUREAU OF PRISONS | | |
| Site Address | 320 FIRST STREET NW   WASHINGTON, DC 20534 | | |
| | Site Phone | 202-317-2198 | Site FAX | |
| Mailing Address | 320 FIRST STREET NW   WASHINGTON, DC 20534 | | |
| | Mail Phone | 202-317-2198 | Mail FAX | |
| Management Official | Michael Carvajal, Director | Telephone | 202-317-2198 |
| Type of Business | Federal Bureau of Prisons | | |

HAZARD DESCRIPTION/LOCATION. Describe briefly the hazard(s) which you believe exist. Include the approximate number of employees exposed to or threatened by each hazard. Specify the particular building or worksite where the alleged violation exists.

PLEASE SEE ATTACHED PAGES FOR COMPLAINT.

| Has this condition been brought to the attention of: | ☐ X Employer  ☐ Other Government Agency(specify) |
|---|---|
| Please Indicate Your Desire: | ☐ Do NOT reveal my name to my Employer |
| | [X] My name may be revealed to the Employer |
| The Undersigned believes that a violation of an Occupational Safety or Health standard exists which is a job safety or health hazard at the establishment named on this form. | (Mark "X" in ONE box)<br>☐ Former Employee<br>☐ X Current Employee    ☐ Federal Safety and Health Committee<br>☐ Representative of Employees  ☐ Other (specify)_____ |
| Complainant Name | SHANE FAUSEY, COUNCIL PRESIDENT | Telephone | 570-419-1414 |
| Address(Street, City, State, Zip) | 22 Quarry Drive   Watsontown, PA 17777 | | |
| Signature | | Date | 3-31-20 |

If you are an authorized representative of employees affected by this complaint, please state the name of the organization that you represent and your title:

Organization Name: Council of Prison Locals 33    Your Title: President

U. S. Department of Labor
Occupational Safety and Health Administration

## Notice of Alleged Safety or Health Hazards

The Federal Bureau of Prisons is in violation of The General Duty Clause, 29 CFR 1960.8, Occupational Safety and Health (OSH) Act of 1970, Section 5 (a) (1) 29 USC 654(a)(1), which requires employers to furnish to each worker "employment and a place of employment, which are free from recognized hazards that are causing or are likely to cause death or serious physical harm."

As a matter of record, this complaint is elevated to and considered an *Imminent Danger Report*, pursuant to OSHA of 1970, Executive Order 12196, 29 CFR 1960.8, Agency's Responsibilities, BOP Program Statement 1600.011. The agency's actions described herein are proliferating the spread of a known and deadly contagion both within our prison system and to our surrounding communities. The agency's actions and inactions are expected to result in death and severe health complications and/or possible life-long disabilities.

Specifically, the Federal Bureau of Prisons, under the direction of N.C. English, Assistant Director of Health Services Division, Jeffery D. Allen, M.D., Medical Director, and Captain Sylvie Cohen, M.D., Branch Chief for Occupational Safety and Health, have directed staff throughout the Bureau of Prisons who have come in contact with, or been in close proximity to, individuals who show or have shown symptoms of COVID-19, to report to work and not be self-quarantined for 14 days per the CDC guidelines. These guidelines state "If a staff member is identified as a close contact of a COVID-19 case (either within the facility or in the community): self-quarantine at home for 14 days and return to work if symptoms do not develop". Mr. Allen and/or Captain Cohen have advised local Institutions with these staff to order them back to work within 48 hours of suspected infection and/or contact with individuals having symptoms or confirmation of the virus. Furthermore, staff who were screened and ordered home due to possible exposure based on the screening instruments used by the Bureau of Prisons were also ordered back to work within 48 hours.

The Bureau of Prisons also has violated the above standard by continuously moving inmates by bus and/or airlift to various prison sites across the nation. They have authorized movement of infected inmates, inmates suspected of being infected, inmates who have been in close contact or proximity to infected inmates, to areas of the Country that do not have any rate of infections, or to Institutions that otherwise have not shown signs of any introduction of the virus, thus introducing the virus into an uninfected area. This is a failure to follow the CDC guidelines that state where COVID-19 cases exist within an Institution, management strategies such as "Suspend all transfers of incarcerated/detained persons to and from other jurisdictions and facilities (including work release where relevant), unless necessary for medical evaluation, medical isolation/quarantine, care, extenuating security concerns, or to prevent overcrowding" should be implemented.

The Bureau of Prisons has failed to introduce workplace controls to mitigate or prevent exposure or further exposure to the virus. They have not implemented engineering controls such as high efficiency air filters or air scrubbers to minimize the airborne nature of this virus or otherwise improved the ventilation rates in the environment. Administrative controls such as encouraging or

U. S. Department of Labor
Occupational Safety and Health Administration

Notice of Alleged Safety or Health Hazards

mandating potentially sick or exposed workers to stay home for self-isolation for 14 days per CDC guidelines, have not been utilized nor have they issued a mandatory lockdown if prisons, which would result in minimal contact with staff and other inmates in areas where the infection has been introduced. Other controls failed to be implemented are modified operations where social distancing among inmates and staff can be accomplished. They have failed to minimize contact within recreation areas, education areas, counseling/treatment rooms, resulting in multiple inmates and staff coming in dangerously close contact with each other after potentially being exposed to the virus.

OSHA's Personal Protective Equipment (PPE) standards, 29 CFR Subpart I, 29 CFR 1910.132, 29 CFR 1910.133, 29 CFR 1910.134, and 29 CFR 1910.138, 29 CFR 1910.1030, Bloodborne Pathogens, which require using gloves, eye and face protection, and respiratory protection, when respirators are necessary to protect workers, employers must implement a comprehensive respiratory protection program in accordance with the Respiratory Protection standard (29 CFR 1910.134). While the Agency has followed or implemented fit testing protocols, the Agency has failed to provide the proper N-95 masks to staff who are transporting and have custodial control over hospitalized inmates testing positive for the virus.

To date, there are 28 confirmed inmate cases and 24 confirmed staff cases within the Federal Bureau of Prisons, with one inmate death thus far. There are multiple staff and inmates hospitalized. Below is a listing of all Federal Bureau of Prison sites affected by this complaint under the direction of Director Michael Carvajal.

U. S. Department of Labor
Occupational Safety and Health Administration

# Notice of Alleged Safety or Health Hazards

| | | | |
|---|---|---|---|
| Alderson, WV FPC | Fairton, NJ FCI | Mendota, CA FCI | Terminal Island, CA FCI |
| Aliceville, AL FCI | Florence, CO FCC | Miami, FL FCI | Terre Haute, IN FCC |
| Allenwood, PA FCC | Forrest City, AR FCC | Miami, FL FDC | Texarkana, TX FCI |
| Ashland, KY FCI | Fort Dix, NJ FCI | Milan, MI FCI | Thomson, IL AUSP |
| Atlanta, GA USP | Fort Worth, TX FMC | Montgomery, AL FPC | Three Rivers, TX FCI |
| Atwater, CA USP | Gilmer, WV FCI | Morgantown, WV FCI | Tucson, AZ FCC |
| Bastrop, TX FCI | Glynco, GA | New York, NY MCC | Victorville, CA FCC |
| Beaumont, TX FCC | Grand Prairie, TX | Oakdale, LA FCC | Waseca, MN FCI |
| Beckley, WV FCI | Greenville, IL FCI | Oklahoma City, OK FTC | Williamsburg, SC FCI |
| Bennettsville, SC FCI | Guaynabo, PR MDC | Otisville, NY FCI | Yankton, SD FPC |
| Berlin, NH FCI | Hazelton, WV FCC | Oxford, WI FCI | Yazoo City, MS FCC |
| Big Sandy, KY USP | Herlong, CA FCI | Pekin, IL FCI | |
| Big Spring, TX FCI | Honolulu, HI FDC | Pensacola, FL FPC | |
| Brooklyn, NY MDC | Houston, TX FDC | Petersburg, VA FCC | |
| Bryan, TX FPC | Jesup, GA FCI | Philadelphia, PA FDC | |
| Butner, NC FCC | La Tuna, TX FCI | Phoenix, AZ FCI | |
| Canaan, PA USP | Leavenworth, KS USP | Pollock, LA FCC | |
| Carswell, TX FMC | Lee, WV USP | Ray Brook, NY FCI | |
| Chicago, IL MCC | Lewisburg, PA USP | Rochester, MN FMC | |
| Coleman, FL FCC | Lexington, KY FMC | Safford, AZ FCI | |
| Cumberland, MD FCI | Lompoc, CA FCC | San Diego, CA MCC | |
| Danbury, CT FCI | Loretto, PA FCI | Sandstone, MN FCI | |
| Devens, MA FMC | Los Angeles, CA MDC | Schuylkill, PA FCI | |
| Dublin, CA FCI | Manchester, KY FCI | Seagoville, TX FCI | |
| Duluth, MN FPC | Marianna, FL FCI | SeaTac, WA FDC | |
| Edgefield, SC FCI | Marion, IL USP | Sheridan, OR FCI | |
| El Reno, TX FCI | McCreary, KY USP | Springfield, MO MCFP | |
| Elkton, OH FCI | McDowell, WV FCI | Talladega, AL FCI | |
| Englewood, CO FCI | McKean, PA FCI | Tallahassee, FL FCI | |
| Estill, SC FCI | Memphis, TN FCI | | |

OSHA-7 (Rev. 3 96)

# USP Terre Haute



# Inmate Bulletin

## Institution Operations

Due to a confirmed positive case of COVID-19 at USP Terre Haute, the outside recreation scheduled to begin Monday, May 18, 2020, will not be implemented. Visitation will continue to be suspended until further notice.

_5-18-20_
Date

T. Taylor, Complex Captain

"EXHIBIT-#99"



**DETROIT AT WORK**

# Training Program Bio

YOUR JOB SEARCH STARTS HERE

## BASIC INFORMATION

| | |
|---|---|
| Training Provider | U.S. Truck Driver Training School |
| Training Program | CDL-A |
| Training Location | 6500 15 Mile Rd, Sterling Heights, MI 48312 |
| Clinical Location, if applicable | |
| Phone Number | (586) 838 - 1268 |
| Website | www.ustdts.edu |

**Description of Training Program**

This class is an entry level CDL class to prepare students for work in the trucking industry. This program is designated to train individuals for basic control skills necessary to obtain their class A CDL. This includes a combination of classroom, range, and road training. Students will be able to operate vehicles with a gross vehicle weight of 26,001 pounds and over. In-depth lecture and textbook materials will cover driving safely, cargo, air brakes, and combination vehicles. The hands-on segment includes docking, right hand turns, coupling of trailers, and the completion of a behind the wheel exam.

## PROGRAM REQUIREMENTS

| | | |
|---|---|---|
| High School Diploma/GED | ☐ Yes | ☒ No |
| Reading Grade Level | 5th Grade | |
| Grade Math Level | 5th Grade | |
| Drug Screen | ☒ Yes | ☐ No |
| Criminal Background Check | ☒ Yes | ☐ No |
|    If yes, which types of convictions are not allowed? | Case by case | |
| Valid Driver License | ☒ Yes | ☐ No |
| Other Requirements | | |

Required supplies available through supportive service

"EXHIBIT-D"

## TRAINING EXPERIENCE

| | | | |
|---|---|---|---|
| **Number of Weeks** | 4 weeks or 10 weekends | **Number of Total Hours** | 160 hours |

**Schedule**  Full-time: Monday – Friday
Part-time: Saturdays

**What is the maximum number of students in each class?**   24

**How many students are expected for each instructor?**   Classroom 24:1; Road 5:1

**Is there an exam required at the end of the training?**   ☒ Yes   ☐ No

## PERFORMANCE

**What is the percentage of students who complete the training program? (*Completion Rate*)**   97%

**What is the percentage of graduates who are placed in employment related to their training within 120 days of completing the program? (*Training Related Placement Rate*)**   80%

**What percentage of students who complete the training program earn an industry recognized certification or license? (*Credential Attainment Rate*)**   Not Available

## PROGRAM COMPLETION

**What credential will graduates earn?**   CDL-A License

**What occupations will graduates be prepared to enter?**   Truck Driver

**What is the average wage of graduates in these occupations?**   Not Available

MICHIGAN
WORKS!

Proud partner of the
American Job Center network

Detroit at Work Career Centers are operated by Detroit Employment Solutions Corporation, a Michigan Works! Agency. They are located throughout the city of Detroit and provide jobseekers with a wide range of FREE employment services, including job placement, career counseling, workshops, and access to training opportunities. To learn more about how Detroit at Work can help you find your new career, please visit DetroitAtWork.com.

An equal opportunity employer/program. Supported by the State of Michigan, Talent Investment Agency. Auxiliary aids and services available upon request to

**U.S. Department of Justice**
**Federal Bureau of Prisons**

*Federal Correctional Complex*
*Terre Haute, Indiana*

*Life Connection Program*

May 8, 2019

**MEMORANDUM FOR LCP UNIT TEAM AND ALL OTHERS CONCERNED**

**FROM:** Jonathan Sutter, Life Connections Program Chaplain

**SUBJECT:** Raynard Crowe, #49984-308
Life Connections Program Graduate

The table below lists the courses which were completed by Mr. Crowe during the eighteen months preceding May 8, 2019, on which date he graduated from the Life Connections Program (LCP) at U.S.P. Terre Haute, Indiana. Any inmate listed as "LCP Comp" in SENTRY may be understood to have completed these courses.

| LIFE CONNECTIONS PROGRAM (LCP) GRADUATION REQUIREMENTS | | |
|---|---|---|
| TITLE | INMATE SKILLS | HOURS |
| ORIENTATION | COGNITIVE | 20 |
| BUILDING BLOCKS TO A HEALTHY COMMUNITY | INTERPERSONAL | 20 |
| PREPARING FOR THE JOURNEY | COGNITIVE | 30 |
| FAITH SPECIFIC SPIRITUAL GROUNDING | CHARACTER | 25 |
| SPIRITUALITY | CHARACTER | 25 |
| RELIGIOUS TOLERANCE | INTERPERSONAL | 20 |
| OBLIGATION TO RIGHT THE WRONG | CHARACTER | 20 |
| MANAGING EMOTIONS | CHARACTER | 25 |
| CONFLICT MANAGEMENT | CHARACTER | 30 |
| FOLLOWING YOUR MORAL COMPASS | CHARACTER | 20 |
| FAMILY LIFE CONNECTIONS | INTERPERSONAL | 40 |
| INSIDE/OUT DADS | INTERPERSONAL/ PARENTING | 24 |
| LEADERSHIP | VOCATIONAL/CAREER | 20 |
| TRANSITIONAL ISSUES | VOCATIONAL/CAREER | 20 |
| ADDICTION / CRIMINAL LIFESTYLE RECOVERY | CHARACTER | 100 |
| JOB SKILLS AND MOCK JOB FAIR | VOCATIONAL/CAREER | 5 |
| IMPACT OF CRIME ON VICTIMS | COGNITIVE | 15 |
| JOURNALING | CHARACTER | 26 |
| COMMUNITY SERVICE | CHARACTER | 500 |
| TOTAL HOURS IN LCP | | 985 |



no postmark

U.S. District Court
Office of the Clerk
231 W. Lafayette Blvd.
Det, MI 48226

RECEIVED
AUG 20
CLERK'S
U.S. DIST.

Raymond Crowe 49984388
P.O. Box-33
Terre Haute, IN 47808

INMATE
IDENTIFICATION
CONFIRMED

RECEIVED
AUG 20 2020
CLERK'S OFFICE
U.S. DISTRICT COURT